UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHERQUIL ERNEST, aka
SHERQUILLE ERNEST,
A#056-206-060,[1]

                           Petitioner,          DECISION and ORDER

-vs-
                                           22-CV-6330 (CJS)

JEFFREY J. SEARLS, Director
Buffalo Federal Detention
Facility,[2]

                           Respondent.
_____

## INTRODUCTION

Sherquil Ernest ("Petitioner"), a citizen of Saint Lucia, is detained at the Buffalo Federal Detention Facility ("BFDF") as a criminal alien subject to a final order of removal. Although Petitioner is not presently appealing his final removal order or opposing his removal in any way, he has been in the custody of the Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency, awaiting removal, for thirteen (13) months.   In this action filed pursuant to 28 U.S.C. § 2241, Petitioner argues that his continued detention is unreasonable and unlawful, based, *inter alia*, on the Supreme Court's decision in *Zadvydas v. I.N.S.*, 533 U.S. 678, 121 S.Ct. 2491 (2001) ("*Zadvydas*"), since it is not likely that ICE will be able to remove him to Saint Lucia in the

---

[1] Sherquille Ernest is the name under which Petitioner was prosecuted in the United States District Court for the Middle District of Pennsylvania. *See, USA v Ernest*, 3:15-CR-00154-07.

[2] The Petition names Merrick B. Garland, U.S. Attorney General, and Jeffrey J. Searls, Director Buffalo Federal Detention Facility, as Respondents.   However, Searls is the only proper respondent in this action. *See, Gutierrez v. Barr*, No. 20-CV-6078-FPG, 2020 WL 2059845, at *3 (W.D.N.Y. Apr. 29, 2020) ("[T]he only proper respondent is Jeffrey Searls, Officer in Charge at the Buffalo Federal Detention Facility. See ECF No. 5 at 20. As the "person with direct control" over Petitioner's detention, *id.*, he is the proper respondent given Petitioner's requested relief. *See Hassoun v. Sessions*, No. 18-CV-586, 2019 WL 78984, at *7 (W.D.N.Y. Jan. 2, 2019) ("The majority view in the Second Circuit requires the immediate custodian, generally the prison warden, to be named as a respondent in core immigration habeas proceedings—i.e., those challenging present physical confinement." (quotation omitted)).").

1

reasonably foreseeable future, as that nation has no record of his citizenship and is consequently unwilling to issue him travel documents.   For reasons discussed below, the Petition is denied in part, and the Court reserves decision on the remainder to allow Respondent an opportunity to submit additional evidence.

BACKGROUND

The facts concerning Petitioner's case are generally not disputed.   Briefly, as set forth in Respondent's Answer and Return, they are as follows:

On December 4, 2019, the Department of Homeland Security served Petitioner with a Notice to Appear ("NTA") asserting that [he] was subject to removal pursuant to: (i) Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") for having been convicted of an aggravated felony, an offense relating to the illicit trafficking in a controlled substance, including a drug trafficking crime; (ii) INA § 237(a)(2)(A)(iii) for having been convicted of an aggravated felony, a law relating to an attempt or conspiracy to commit an offense described in INA § 101(a)(43); and iii) INA § 237(a)(2)(B)(i) for having been convicted of a violation (or a conspiracy or attempt to violate) and law or regulation relating to a controlled substance.   Petitioner [admitted the allegations and][3] was ordered removed from the United States to St. Lucia by an Immigration Judge on December 7, 2020.   On May 20, 2021, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal of the denial of his claim to relief from removal.   On October 8, 2021, ICE took custody of Petitioner upon his release from the Allenwood Federal Correctional Complex [where he had been serving his criminal sentence.]   On April 29, 2022, ICE transferred Petitioner to the [BFDF, where he] is currently [being] held [pursuant to 8 U.S.C. § 1231(a)(6)] . . . pending his removal from the United States.

ECF No. 4 (citations and some internal quotation marks omitted).   Except for this action, Petitioner has no appeals or petitions pending relating to his immigration status, and there is no procedural impediment to his removal.

---

[3] *See*, ECF No. 4-2 at p. 25 (Decision of Immigration Judge).

ICE did not remove Petitioner during the 90-day removal period, and had, as of the time briefing was complete, conducted two post-removal-period reviews of Petitioner's detention, one on April 20, 2022, and another on July 12, 2022. ECF No. 4-2 at pp. 22–23.[4]   That is, in accordance with 8 C.F.R. § 241.4(k), the first review was conducted approximately three months after the 90-day removal period ended, and the second occurred approximately three months thereafter.   In both instances, ICE's Office of Enforcement and Removal Operations decided to continue detaining Petitioner, purportedly based on consideration of factors set forth in 8 C.F.R. § 241.4(e), (f) and (g).[5]

---

[4] The Petition references only one "custody review," that occurred on July 12, 2022." ECF No. 1 at ¶ 4. However, insofar as that reference suggests that was the only such review, it is inconsistent with the documentary record, which shows two post-removal period reviews.   Additionally, since neither party says otherwise, the Court assumes that ICE also conducted a records review prior to the expiration of the removal period as required by 8 C.F.R. § § 241.4(h) & (k)(1)(i).

[5] *See*, 8 C.F.R. § 241.4 (e), (f) & (g):

> (e) Criteria for release. Before making any recommendation or decision to release a detainee, a majority of the Review Panel members, or the Director of the HQPDU in the case of a record review, must conclude that: (1) Travel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest; (2) The detainee is presently a non-violent person; (3) The detainee is likely to remain nonviolent if released; (4) The detainee is not likely to pose a threat to the community following release; (5) The detainee is not likely to violate the conditions of release; and (6) The detainee does not pose a significant flight risk if released.

> (f) Factors for consideration. The following factors should be weighed in considering whether to recommend further detention or release of a detainee: (1) The nature and number of disciplinary infractions or incident reports received when incarcerated or while in Service custody; (2) The detainee's criminal conduct and criminal convictions, including consideration of the nature and severity of the alien's convictions, sentences imposed and time actually served, probation and criminal parole history, evidence of recidivism, and other criminal history; (3) Any available psychiatric and psychological reports pertaining to the detainee's mental health; (4) Evidence of rehabilitation including institutional progress relating to participation in work, educational, and vocational programs, where available; (5) Favorable factors, including ties to the United States such as the number of close relatives residing here lawfully; (6) Prior immigration violations and history; (7) The likelihood that the alien is a significant flight risk or may abscond to avoid removal, including history of escapes, failures to appear for immigration or other proceedings, absence without leave from any halfway house or sponsorship program, and other defaults; and (8) Any other information that is probative of whether the alien is likely to— (i) Adjust to life in a community, (ii) Engage in future acts of violence, (iii) Engage in future criminal activity, (iv)

3

Pose a danger to the safety of himself or herself or to other persons or to property, or (v) Violate the conditions of his or her release from immigration custody pending removal from the United States.

(g) Travel documents and docket control for aliens continued in detention— (1) Removal period. (i) The removal period for an alien subject to a final order of removal shall begin on the latest of the following dates: (A) The date the order becomes administratively final; (B) If the removal order is subject to judicial review (including review by habeas corpus) and if the court has ordered a stay of the alien's removal, the date on which, consistent with the court's order, the removal order can be executed and the alien removed; or (C) If the alien was detained or confined, except in connection with a proceeding under this chapter relating to removability, the date the alien is released from the detention or confinement. (ii) The removal period shall run for a period of 90 days. However, the removal period is extended under section 241(a)(1)(C) of the Act if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal. The Service will provide such an alien with a Notice of Failure to Comply, as provided in paragraph (g)(5) of this section, before the expiration of the removal period. The removal period shall be extended until the alien demonstrates to the Service that he or she has complied with the statutory obligations. Once the alien has complied with his or her obligations under the law, the Service shall have a reasonable period of time in order to effect the alien's removal. (2) In general. The district director shall continue to undertake appropriate steps to secure travel documents for the alien both before and after the expiration of the removal period. If the district director is unable to secure travel documents within the removal period, he or she shall apply for assistance from Headquarters Detention and Deportation, Office of Field Operations. The district director shall promptly advise the HQPDU Director when travel documents are obtained for an alien whose custody is subject to review by the HQPDU. The Service's determination that receipt of a travel document is likely may by itself warrant continuation of detention pending the removal of the alien from the United States. (3) Availability of travel document. In making a custody determination, the district director and the Director of the HQPDU shall consider the ability to obtain a travel document for the alien. If it is established at any stage of a custody review that, in the judgment of the Service, travel documents can be obtained, or such document is forthcoming, the alien will not be released unless immediate removal is not practicable or in the public interest. (4) Removal. The Service will not conduct a custody review under these procedures when the Service notifies the alien that it is ready to execute an order of removal. (5) Alien's compliance and cooperation. (i) Release will be denied and the alien may remain in detention if the alien fails or refuses to make timely application in good faith for travel documents necessary to the alien's departure or conspires or acts to prevent the alien's removal. The detention provisions of section 241(a)(2) of the Act will continue to apply, including provisions that mandate detention of certain criminal and terrorist aliens. (ii) The Service shall serve the alien with a Notice of Failure to Comply, which shall advise the alien of the following: the provisions of sections 241(a)(1)(C) (extension of removal period) and 243(a) of the Act (criminal penalties related to removal); the circumstances demonstrating his or her failure to comply with the requirements of section 241(a)(1)(C) of the Act; and an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements. (iii) The Service shall advise the alien that the Notice of Failure to Comply shall have the effect of extending the removal period as provided by law, if the removal period has not yet expired, and that the Service is not obligated to complete its scheduled custody reviews under this section until the alien has demonstrated compliance

4

For example, one such decision explained in pertinent part:

> ICE is working with the Government of St. Lucia to secure a Travel Document (TD) for our removal from the United States.   Your removal from the United States to St. Lucia is expected to occur in the reasonably foreseeable future; therefore, you are to remain in ICE custody at this time, as ICE is unable to conclude that the factors set forth at 8 C.F.R. § 241.4(e) have been satisfied.   This decision, however, does not preclude you from bringing forth evidence in the future to demonstrate a good reason why your removal is unlikely.

ECF No. 4-2.

The pertinent regulations do not allow for appeals from such post-removal period custody-review determinations.   However, the regulations do allow the alien to seek reconsideration as frequently as every three months, by bringing forth evidence of changed circumstances. 8 C.R.R. § 241.4(k)(2)(iii).   Indeed, as noted above, the written custody determinations that Petitioner received indicated that he could seek reconsideration by submitting additional information.

Moreover, 8 C.F.R. § 241.13, adopted in response to the *Zadvydas* decision, "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). Petitioner acknowledges his awareness of 8 C.F.R. § 241.13, including the fact that

---

with the statutory obligations. (iv) The fact that the Service does not provide a Notice of Failure to Comply, within the 90–day removal period, to an alien who has failed to comply with the requirements of section 241(a)(1)(C) of the Act, shall not have the effect of excusing the alien's conduct." (West 2022).

review thereunder must be triggered by a written request from the alien.[6]

However, it does not appear that Petitioner ever attempted to utilize the procedures set forth in 8 C.F.R § 241.4(k)(2)(iii) or § 241.13. That is, neither Petitioner nor Respondent indicates that he did so, and the present record contains nothing that could be construed as a request by Petitioner under either section.

On August 5, 2022, after ten months in ICE custody, Petitioner filed the subject Petition, arguing that he should be released, since his detention has become unduly prolonged and unreasonable. Petitioner acknowledges that he is subject to a final order of removal after having been convicted of "drug trafficking" and aggravated felonies.[7] Petitioner maintains that his 90-day removal period began on October 8, 2021, and that the presumptively reasonable 6-month period for ICE to remove him therefore ended on April 9, 2022. Petitioner admits that ICE could nevertheless continue to detain him if "the prospects of the timeliness of [his] removal [remained] reasonable under the circumstances,"[8] but contends that is not the case here. Petitioner alleges that the cause of the delay in removing him is that Saint Lucia has not issued a travel document:

> Petitioner has yet to receive any travel documents from the Saint Lucia consulate. . . . Petitioner's consulate has not issued travel documents and there is no certainty as to when, if ever, such papers will be issued. Thus, Petitioner's removal from the United States is not likely to occur within the reasonabl[y] foreseeable future.

Pet. at p. 4.

The Court liberally construes the Petition as asserting three claims: 1) a claim that Petitioner's continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by

---

[6] ECF No. 1 at pp. 7–8, ¶ ¶ 18–19.
[7] ECF No. 1 at ¶ 13.
[8] ECF No. 1 at ¶ 19.

*Zadvydas*, since he has been detained longer than six months and his removal to Saint Lucia is not likely to occur in the reasonably foreseeable future; 2) a claim that his detention violates substantive due process under the Fifth Amendment and *Zadvydas,* since he has been detained longer than six months and his removal to Saint Lucia is not likely to occur in the reasonably foreseeable future; and 3) a claim that his detention violates his procedural due process rights under the Fifth Amendment in that his detention has become "unreasonably prolonged" "without a meaningful review of his detention in accordance with federal regulations."[9]

On August 10, 2022, the Court issued an Order (ECF No. 2) directing Respondent to answer the Petition.   On September 26, 2022, Respondent filed his Answer and Return (ECF No. 4).[10]   Respondent maintains that none of the Petition's three claims has merit.

More specifically, as for Petitioner's first and second claims, based on 8 U.S.C. § 1231(a)(6)/*Zadvydas* and the substantive due process clause, respectively, Respondent indicates that they lack merit, and that Petitioner's continued detention is reasonable, since Saint Lucia is likely to issue a travel document at some point in the near future. More specifically, Respondent states that,

---

[9] "The Due Process Clause of the Fourteenth Amendment contains both a substantive component and a procedural component. *Zinernon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinernon*, 494 U.S. at 125 [internal quotations marks omitted]. The procedural component bars 'the deprivation by state action of a constitutionally protected interest in life, liberty, or property ... without due process of law.' *Id*. at 125–126 [internal quotations marks and citations omitted; emphasis in original]. One of the differences between the two claims is that a substantive due process violation 'is complete when the wrongful action is taken,' while a procedural due process violation 'is not complete unless and until the State fails to provide due process' (which may occur after the wrongful action in question). *Id*."   *Henry v. Dinelle*, No. 9:10-CV-0456 GTS/DEP, 2011 WL 5975027, at *5 (N.D.N.Y. Nov. 29, 2011).
[10] Respondent additionally maintains that Petitioner has incorrectly listed the U.S. Attorney General as a respondent.   As indicated in footnote 1, the Court agrees and dismisses the Attorney General.

ICE Enforcement and Removal Operations ("ERO") has been in regular contact with the consulate of St. Lucia to request travel documents necessary to effect Petitioner's removal.   ERO's most recent contact with the consulate of St. Lucia regarding its request for Petitioner's travel documents was on September 21, 2022.   Pending his removal, Petitioner has been mandatorily detained [sic] as a criminal alien.[11]   On April 20, 2022, and July 12, 2022, ICE issued a Decision to Continue Detention in light of its expectation that a travel document would be issued from the government of St. Lucia and Petitioner would be removed in the reasonably foreseeable future.   There is no institutional barrier to Petitioner's removal to St. Lucia; in recent years, DHS has successfully repatriated noncitizens to St. Lucia.

ECF No. 4 at ¶ 19.[12]   Indeed, Respondent suggests that removal of aliens to Saint Lucia is commonplace.[13]   Respondent, though, offers no explanation for why no travel document has been obtained for Petitioner despite the passage of a year.   For example, a supporting affidavit from the BFDF Deportation Officer gives no hint of any particular reason for the delay.   Respondent's memo of law, on the other hand, briefly alludes to a need to verify Petitioner's identity, but does not provide specifics. *See*, ECF No. 4-3 at pp. 9–10 ("Respondents have shown that BICE has contacted the St. Lucia Consulate to

---

[11]  As discussed further below, after ninety days, post-final-removal-order detention is not mandatory, even for persons convicted of aggravated felonies. *See*, 8 U.S.C. § 1231(a)(6) ("An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the [90-day] removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." (West 2022); *see also*, *Garland v. Aleman Gonzalez*, 213 L. Ed. 2d 102, 142 S. Ct. 2057, 2063 (2022) ("The two cases before us arise out of respondents' detention pursuant to § 1231(a)(6), which gives the Federal Government discretionary authority in specified circumstances to detain aliens who have been "'ordered removed'" from the United States.").

[12]  Respondent devotes the bulk of his papers to rehashing Petitioner's criminal history which, while extensive, is not disputed or particularly relevant to the issue before the Court, namely, whether ICE is likely to be able to remove Petitioner to Saint Lucia in the foreseeable future.

[13]  ECF No. 4 at ¶ ¶ 21–23.

facilitate his removal and that the consulate once Petitioner's identity is verified will issue a travel document."). Respondent also adds that he "anticipates further reviewing Petitioner's continued detention within the next 90 days in the event [ICE] has *not* secured travel documents from St. Lucia." ECF No. 4-1 at ¶ 28 (emphasis added).

As for the procedural due process claim, Respondent asserts that Petitioner received all the process to which he was entitled during custody reviews in April 2022 and July 2022. *See*, ECF No. 4-1 at ¶ 24 ("On April 20, 2022, and July 12, 2022, ICE, issued a Decision to Continue Detention in light of its expectation that a travel document would be issued from the government of St. Lucia and Petitioner would be removed in the reasonably foreseeable future."); *see also*, ECF No. 4-2 at pp. 22-23 (copies of Decisions to Continue Detention, dated April 20, 2022 and July 12, 2022); ECF No. 4-3 at pp. 11-12 ("The post-removal order custody review process, implemented after *Zadvydas* and applied to petitioner, satisfies the requirements of 8 U.S.C. § 1231(a)(6) and the Due Process Clause. *See* 8 C.F.R. § 241.4. A detained noncitizen is entitled to review of his custody status prior to the expiration of the removal period (8 C.F.R. § 241.4(k)(1)) and at annual intervals thereafter (8 C.F.R. § 241.4(k)(2)), with the right to request interim reviews not more than once every three months in the period between annual reviews (8 C.F.R. § 41.4(k)(2)(iii)). The reviewing DHS official must consider several factors when determining whether to release a noncitizen or continue his detention pending removal from the United States. *See* 8 C.F.R. § 241.4(f). These factors include the noncitizen's prior immigration violations and violent history. *Id*. Petitioner received consideration of the regulatory factors in his April 2022 and July 2022 custody redetermination reviews. Smith Decl. ¶ 24. There, DHS conducted a review of Petitioner's criminal history, considered the status of the government's removal efforts, and concluded that further detention was warranted.").

9

On October 24, 2022, Petitioner filed a Reply (ECF No. 6), in which he relates his own efforts to obtain a travel document from Saint Lucia.    In particular, Petitioner asserts that since October 14, 2021, he has telephoned the Embassy of Saint Lucia eighteen (18) times, and written to it six (6) times, seeking an explanation for why no travel document has issued.    He maintains the answer he has received is relatively simple: Saint Lucia has no record of his citizenship.    According to Petitioner, in response to his question as to whether a travel document might issue in one, two or three years, an Embassy official told him: "There is no specific time [in which Saint Lucia will issue a travel document] because you left the country as a teenager.    We have any [sic] record of you neither can we confirm that you are a citizen of St. Lucia." ECF No. 6 at p. 1.    Petitioner further indicates that his ICE Deportation Officer told him that the Saint Lucia Embassy had promised to provide travel documents, but that the actual Embassy staff refuted that and insisted that "they did not promise anyone anything because they can not even confirm if [Petitioner] is a citizen of St. Lucia." *Id*.

## DISCUSSION

Petitioner is proceeding *pro se*, and the Court therefore must construe his submissions liberally as raising the strongest arguments they suggest. *See, Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) ("We construe complaints filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest.") (citation and internal quotation marks omitted).

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir.2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. at 687 (petition under § 2241 is the

basic method for statutory and constitutional challenges to detention following order of removal).

Here, it is undisputed that Petitioner is detained pursuant to INA § 241, 8 U.S.C. § 1231, which authorizes detention of aliens after the issuance of a final removal order.   In that regard, the statute requires the Attorney General to accomplish removal within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

(i) The date the order of removal becomes administratively final.
(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).   Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General shall detain the alien.").   Thereafter, the INA authorizes the Attorney General to continue to detain aliens, such as Petitioner, who were ordered removed due to, *inter alia*, having committed aggravated felonies, pending removal. *See*, INA § 241(a)(6), 8 U.S.C. § 1231(a)(6).[14]

The Procedural Due Process Claim

The Petition alleges a procedural due process violation, based on ICE's alleged failure to follow its own procedures.   In particular, the Petition asserts that,

Petitioner had not received a "searching periodic review" of his custody status.   ICE has never asserted that special circumstances exist to justify Petitioner's prolonged detention, or that Petitioner poses a danger to

---

[14]*See*, 8 U.S.C.A. § 1231(a)(6) ("An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).").

> national security or that he's a flight risk.   Thus, Petitioner alleges that his
> detention violates . . . procedural due process insofar as ICE has failed to
> conduct periodic review of his status in accordance with its own procedures
> and has made no determination that he posed either a danger to society or
> a flight risk.

ECF No. 1 at p. 9, ¶ 21; *see also, id*. at ¶ 32 ("[P]rolonged detention more than nine

months without a meaningful review of his detention in accordance with federal

regulations violates his right to procedural due process[.]").

Petitioner argues that ICE failed to follow its own procedures and/or failed to

provide "meaningful review of his detention *in accordance with federal regulations*."

(emphasis added).[15]   He does not allege he was denied a particular type of review to

which he was entitled under 8 C.F.R. § 241.4(k),[16] but, rather, alleges that the review he

received was not meaningful in that it did not consider whether he was a flight risk or a

danger to the community.

However, Petitioner has not demonstrated that his procedural due process rights

were violated.   Although Petitioner asserts that ICE failed to provide him with post-

removal-period detention reviews in accordance with its own regulations, he offers only

conclusory assertions in that regard.   The record, meanwhile, indicates that Petitioner

received the process to which he was entitled under the pertinent statute and

---

[15] The Court is aware that it is an open question whether § 1231(a)(6)'s failure to explicitly require bond hearings when detention becomes prolonged violates procedural due process. *See, Johnson v. Arteaga-Martinez*, 142 S.Ct. at 1834-35.   However, the Court does not interpret the Petition as raising that argument.   Nor, even assuming that such an argument can be gleaned, has Petitioner shown that existing procedures are inadequate.

[16] Petitioner admits, for example, that HQPODU performed his six-month detention review. Pet. at ¶ 16.

regulations.[17]

Petitioner does not dispute, for example, that his post-removal-period detention is authorized by 8 U.S.C. § 1231(a)(6), since he is "removable under [8 U.S.C.] section . . . 1227(a)(2)" due to having been convicted of aggravated felonies and controlled substance offenses.   Additionally, while the Petition asserts that ICE improperly failed to consider whether he was a flight risk or a danger to the community, the decisions that he received from ICE's Office of Enforcement and Removal Operations indicate that it considered the factors set forth in 8 C.F.R. § 241.4(e), (f) and (g), which include consideration of whether he would be a danger to the community or a risk of flight if released. 8 C.F.R. § 241.4(e)(4)&(6), (f)(7)&(8)(iv).

In sum, Petitioner's vague contention that he was not provided "meaningful" review does not establish a procedural due process violation where, as here, it appears ICE conducted his post-removal period detention reviews in accordance with 8 C.F.R. § 241.4. *See, Diaz-Martin v. Holder*, No. CIV.A. 11-6692 PGS, 2012 WL 4661479, at *5 (D.N.J. Oct. 2, 2012) ("Petitioner also makes conclusory, generalized arguments that his detention violated his procedural due process rights because he is being denied a "timely and meaningful opportunity to demonstrate that he should not be detained". However, this argument is without merit. Petitioner has received custody reviews as documented by the decisions of August 30, 2011 and December 20, 2011."); *see also, Portillo v.*

---

[17]  Respondent has shown that ICE conducted periodic reviews of Petitioner's detention in accordance with its regulations, and permissibly opted to continue detaining him after it found that he would likely be removed to Saint Lucia in the reasonably foreseeable future.

*Decker*, No. 21 CIV. 9506 (PAE), 2022 WL 826941, at *7 (S.D.N.Y. Mar. 18, 2022) ("[T]o the extent Portillo suggests that the statutory and regulatory framework at issue has been errantly applied to him, on the record before the Court, there is no factual basis to so assert. It is undisputed that ICE has conducted the necessary periodic reviews of Portillo's detention. It timely conducted both its 90-day and 180-day post-order custody review. And it served on Portillo its final decisions denying release."); *Moses v. Lynch*, No. 15-CV-4168 (PAM/JJK), 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016) ("Moses's procedural due process claim should be rejected. When immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations, such aliens receive the process that is constitutionally required.") (citation omitted), report and recommendation adopted, No. 15CV4168 (PAM/JJK), 2016 WL 2596020 (D. Minn. May 5, 2016).

Additionally, the relevant statute and regulations did not entitle Petitioner to an individualized bond hearing after six months. *See, Johnson v. Arteaga-Martinez*, 142 S.Ct. 1827, 1830 (2022) ("The issue in this case is whether the text of § 1231(a)(6) requires the Government to offer detained noncitizens [aliens] bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community. It does not.").

Finally, to the extent Petitioner's papers can be liberally construed as alleging that the statute and regulations are themselves inadequate to prevent the deprivation of liberty

that he claims to have suffered –prolonged detention without due process after it became evident that Saint Lucia would not issue a travel document in the reasonably foreseeable future—he has not made such a showing.   For example, 8 C.F.R. § 241.13 provides a mechanism for Petitioner to seek release on that basis, which he apparently did not utilize, [18] and he has not explained why such process would be constitutionally inadequate for an alien, ordered removed "under [8 U.S.C.] section . . . 1227(a)(2)," awaiting removal.   Accordingly, the procedural due process claim is denied without prejudice.

The *Zadvydas*/Substantive Due Process Claim

Petitioner alternatively contends that his continued detention under § 1231(a)(6) violates that statute and substantive due process, since it is not likely that he will be removed in the reasonably foreseeable future.   In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling the INA's apparent authorization of indefinite post-removal-order detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a), 8 U.S.C. § 1231(a), authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699–700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure

---

[18]  *See, Filmon v. Hendricks*, No. CIV.A. 13-6739 DMC, 2013 WL 6154440, at *4 (D.N.J. Nov. 15, 2013) ("Section 241.13 applies "where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). Since Mr. Filmon does not allege that he provided immigration officials with good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and Filmon does not set forth facts establishing good reason in his § 2241 petition, he has not alleged any violation of the cited regulations.").

removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts ...." *Id.* at 701.

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

In the instant case, Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.   In that regard, as just mentioned, with the period of post-removal confinement now surpassing thirteen months, the "reasonably foreseeable future" is a relatively short window.   Moreover, Petitioner indicates that officials at the Saint Lucia Embassy have refused to rule out the possibility that it could take years before a travel document might be issued. *See*, Reply (ECF No. 6) at p.1 ("I asked when should I expect a travel document?   One (1) year, two (2) years or three (3) years?   His reply was that there is no specific time because you left the country as a teenager.   We have any [sic] record of you, neither we can confirm that you are a citizen of St. Lucia.").

The Government must therefore respond with evidence sufficient to rebut Petitioner's showing, and, again, for detention to remain reasonable, what counts as the "reasonably foreseeable future" must be relatively soon.   So far, however, the Government has not made such rebuttal.   At most, Respondent counters that ICE

regularly removes aliens to Saint Lucia.   However, that assertion, while perhaps true, is irrelevant to Petitioner's situation, without some showing that the aliens to whom Respondent refers were similarly situated to Petitioner, meaning that Saint Lucia also had no record of their citizenship.   Nor has Respondent indicated what, if anything, is being done in conjunction with officials in Saint Lucia to establish Petitioner's citizenship, so that a travel document can issue.   Nor has Respondent offered any guess as to when removal might occur.   In sum, Respondent has offered little to rebut Petitioner's contention that there is no significant likelihood of his removal in the reasonably foreseeable future.

However, before ruling on this claim, the Court will follow the procedure used by another Judge of this District under similar circumstances:

> The Court finds that, at this time, Respondent has failed to rebut Petitioner's showing. Respondent argues that the recent evidence supplied by Petitioner "shows that both the United States government and the Indian government are working towards verifying Petitioner's identity" and the "confirmation of Petitioner's identity and the issuance of travel documents from India are the final steps in his removal." (Dkt. 4-3 at 11–12). However, almost six months have passed since that time and Petitioner apparently remains in the United States. As such, "this Court is left to guess whether [Petitioner's] deportation might occur in ten days, ten months, or ten years." *Singh* [*v. Whitaker*,] 362 F. Supp. 3d [93,] 102 [(W.D.N.Y. 2019)].
>
> Nonetheless, the Court does not find it appropriate to grant the petition without affording Respondent an opportunity to file a supplemental submission in opposition.

*Cyclewala v. Searls*, No. 6:21-CV-06372 EAW, 2021 WL 5989781, at *6 (W.D.N.Y. Dec. 16, 2021).

Accordingly, the Court directs Respondent to file any supplemental opposition to the Petition on or before **December 7, 2022**.   In particular, the submission should specify

17

the exact nature of the impediment to the issuance of a travel document and the specific steps that have been taken to date to resolve the problem.   Additionally, Respondent should provide a well-supported estimate of when a travel document might issue, including a statement as to amount of time it took to complete the process in other cases involving citizens of Saint Lucia for whom citizenship records were missing or nonexistent.

CONCLUSION

For the reasons explained above the Court denies Petitioner's procedural due process claim.   As for the remaining claims, the Court concludes that Petitioner has met his initial burden of demonstrating that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future, and grants Respondent an opportunity to supplement his submissions, on or before **December 7, 2022**, to rebut that showing.   Thereafter, the Court may issue a written decision or schedule a hearing.   The Clerk of the Court is directed to terminate Merrick Garland, U.S. Attorney General, as a party to this action.

SO ORDERED.

Dated: Rochester, New York
        November 22, 2022          ENTER:


CHARLES J. SIRAGUSA
United States District Judge

18